UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------X **Docket#**
UNITED STATES OF AMERICA,       : 23-mj-00956-LB
                                :
                                :
    - versus -                  : U.S. Courthouse
                                : Brooklyn, New York
NIKOLAY GOLTSEV, et al.,        :
                                : October 31, 2023
              Defendants        : 3:45 p.m.
------------------------------X

        TRANSCRIPT OF CRIMINAL CAUSE FOR ARRAIGNMENT
           BEFORE THE HONORABLE LOIS BLOOM
           UNITED STATES CHIEF MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**


<u>**For the Government**</u>:          **Breon S. Peace, Esq.**
                                United States Attorney

                         BY:    **Artie  McConnell, Esq.**
                                Assistant U.S. Attorney
                                271 Cadman Plaza East
                                Brooklyn, New York 11201

<u>**For Def. Goltsev**</u>:           **Sarah M. Sacks, Esq.**
                                Epstein Sacks PLLC
                                100 Lafayette Street, Ste. 502
                                New York, NY 10013


<u>**For Def. Nasriddinov**</u>:       **Virginia G. Alvarez, Esq.**
                                233 Broadway, Ste. 2348
                                New York, NY 10279


<u>**For Def. Puzyreva**</u>:          **Jeffrey Dahlberg, Esq.**
                                Federal Defenders of New York
                                One Pierrepont Plaza, 16th Fl.
                                Brooklyn, NY 11201



<u>**Transcription Service**</u>:      **Transcriptions Plus II, Inc.**
                                61 Beatrice Avenue
                                West Islip, New York 11795
                                RL.Transcriptions2@gmail.com



Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

Proceedings

1          THE CLERK:  So we have a Criminal Cause for an

2     Arraignment.  It is 23-mj-956, *The United States v.*

3     *Nikolay Goltsev, Salimdzhon Nasriddinov, Kristina*

4     *Puzyreva.*

5          Counsel, state your appearances, please,

6     starting with the government.

7          MR. McCONNELL:  Your Honor, good afternoon.

8     Artie McConnell for the United States.

9          MS. SACKS:  Good afternoon, your Honor.  Sarah

10     Sacks for Mr. Goltsev who's sitting to my right.

11          MS. ALVAREZ:  Good afternoon, your Honor.

12     Virginia Alvarez on behalf of Mr. Nasriddinov.

13          MR. DAHLBERG:  Good afternoon, your Honor.

14     Jeff Dahlberg, Federal Defenders, on behalf of Ms.

15     Puzyreva.

16          THE COURT:  Good afternoon, Mr. Goltsev, Mr.

17     Nasriddinov, and Ms. Puzyreva.  And I apologize if I'm

18     mispronouncing your names.

19          The purpose of today's proceeding is to make

20     sure that you understand the nature of the charges being

21     made against you by the United States of America and to

22     make sure that you understand that you have certain

23     constitutional rights.

24          First, you have the right to be represented --

25     I'm sorry, Mr. Nasriddinov's earpiece does not appear to

Proceedings

1    be working and we have an interpreter here.  Could I

2    please ask the interpreter to state your name for the

3    record?

4            THE INTERPRETER:  Russian interpreter

5    Kostantine Garnov, G-A-R-N-O-V.

6            THE COURT:  And Mr. Garnov, can you please

7    raise your right hand?  And is the other gentleman also

8    going to interpret?  Your name, sir?

9            THE INTERPRETER:  Sanjar Babadjanov.

10           THE COURT:  And are you also going to interpret

11   if need be?

12           THE INTERPRETER:  If need be, yeah.

13           THE COURT:  Okay.  So both of you please raise

14   your right hand.

15                   (Interpreters sworn)

16           THE COURT:  Thank you.  So back to you.  The

17   purpose of the proceeding is to make sure that you

18   understand the nature of the charges being made against

19   you by the United States of America and to make sure that

20   you understand that you have certain constitutional

21   rights.

22           Mr. Nasriddinov, it's not working for you?

23           DEFENDANT NASRIDDINOV:  Yes, it's working right

24   now.

25           THE COURT:  Okay.  Very good.  Just put up your

1    hand like this if it's not working.  Okay, sir?  It's

2    important that you understand these proceedings.

3              UNIDENTIFIED SPEAKER:  Hello?

4              THE COURT:  I don't know who's on the line but

5    whoever's on the line, please mute yourself.

6              We're taking a moment so that Mr. Nasriddinov's

7    earpiece and the interpreter's are connected.

8                    (Pause in proceedings)

9              THE COURT:  Okay.  Start over.  The purpose of

10   today's proceeding is to make sure that you understand

11   the nature of the charges being made against you by the

12   United States of America and to make sure that you

13   understand that you have certain constitutional rights.

14             First, you have the right to be represented by

15   an attorney at today's proceeding and at all future

16   proceedings before this Court.  And if you are unable to

17   afford counsel, the Court will appoint counsel to

18   represent you.

19             Toward that end, Mr. Goltsev, when you met with

20   Pretrial Services you filled out a financial affidavit.

21   It states that you do have a job, that you earn

22   approximately $14,000 a month, that you own a Lexus, that

23   you have a home that's worth approximately $1 million but

24   you owe $250,000.  And at least for the purpose of

25   today's proceeding, the Court will appoint counsel for

Proceedings

1   you and finds that you'd be unable to afford counsel.

2   And the Court has appointed Ms. Sacks, who's a member of

3   the Criminal Justice Act panel, to be your attorney in

4   today's proceeding and all future proceedings before the

5   Court.

6           And I understand that you just met Ms. Sacks

7   and quite frankly, I have just met Ms. Sacks.  But I do

8   want you to know that all lawyers who are part of the

9   Criminal Justice Act panel of this court are lawyers who

10  have substantial federal criminal trial experience, that

11  you have to apply.  They do not let any lawyer just be on

12  this panel.

13          The others on the phone, please mute the phone.

14          So again, Ms. Sacks is appointed to represent

15  you in this matter and will be your attorney.

16          Ms. Alvarez was chosen by you, Mr. Nasriddinov,

17  and you're entitled to counsel of your own choice.  But

18  if for any reason you become unable to afford counsel,

19  you may make an application to the Court.

20          And last but not least, Ms. Puzyreva, you also

21  filled out a financial affidavit which states that you

22  earn approximately $2,700 a month, that you own a home

23  and a Lexus, I think the same as your husband.  And based

24  on the financial affidavit, the Court appoints the

25  Federal Defenders of New York to represent you in this

Proceedings

1   matter.

2          And I understand that you just met your counsel

3   today but I will tell you that Mr. Dahlberg has been a

4   member of the Federal Defenders for --

5          MR. DAHLBERG:  I've been doing --

6          THE COURT:  You were in Maryland first and then

7   you came here, correct?

8          MR. DAHLBERG:  I've been doing this seven and a

9   half years.  I came here this year.

10          THE COURT:  So I just want you to know that

11   Federal Defenders are some of the best lawyers we see

12   quite frankly, that they are the ones who every day are

13   appearing before the judges of this court and they do

14   nothing else except represent people in this court who

15   are unable to afford counsel.

16          So I'm saying that because you've never been

17   arrested before.  You don't even come from this country.

18   So I just want you to know that the attorneys that you

19   have been appointed are not part of the government.  They

20   are appointed for you, but they are not somebody who is

21   an arm of law enforcement.  They are separate and they

22   will represent you zealously in this matter.  And Ms.

23   Alvarez has been chosen by Mr. Nasriddinov, and you're

24   entitled to counsel.

25          You have the right to remain silent.  If you

Proceedings

1    started to make a statement, you may stop.  Any statement

2    that you make to anyone other than your attorney can be

3    used against you in the court.  Do you understand that

4    you have the right to counsel and the right to remain

5    silent, Mr. Goltsev?

6              DEFENDANT GOLTSEV:  Yes.

7              THE COURT:  Do you understand that you have the

8    right to counsel and the right to remain silent, Mr.

9    Nasriddinov?  I need you to use your voice?

10             DEFENDANT NASRIDDINOV:  Yes.

11             THE COURT:  And do you understand that you have

12   the right to counsel and the right to remain silent, Ms.

13   Puzyreva?  Can you just make sure that there's a mic

14   behind, Mr. Dahlberg, your computer?  Behind your

15   computer there's a flat mic.

16             MS. SACKS:  I don't think so.

17             MS. ALVAREZ:  No, there's no flat mic, your

18   Honor.

19             MR. DAHLBERG:  No, your Honor.

20             DEFENDANT PUZYREVA:  Yes.

21             THE CLERK:  Jeff, you guys can turn around and

22   use this table if you'd like.  I'm sorry.

23             THE COURT:  Ms. Puzyreva, do you mind turning

24   to this table where there's a mic?  Because you have a

25   very soft voice and I need to take everybody's answers.

Proceedings

1   So do you understand you have the right to counsel and

2   the right to remain silent?

3            DEFENDANT PUZYREVA:  Yes.

4            THE COURT:  Thank you.  Starting back with you,

5   Mr. Goltsev, have you had the opportunity to review the

6   affidavit and complaint in support of the arrest warrants

7   with your attorney?

8            DEFENDANT GOLTSEV:  Yes, I did.

9            THE COURT:  And do you understand the charges

10  that are being made against you?

11           DEFENDANT GOLTSEV:  I do.

12           THE COURT:  And Ms. Sacks, have you had the

13  opportunity to review the affidavit and complaint with

14  your client?

15           MS. SACKS:  Yes.  Yes, your Honor.  I've

16  reviewed it with my client.  I believe that he

17  understands what the charges are based on our

18  conversations about it.  We waive --

19           THE COURT:  And have you advised him of his

20  constitutional rights?

21           MS. SACKS:  Yes, I've --

22           THE COURT:  There's no indictment now, so

23  there's no reading the indictment.

24           MS. SACKS:  Oh.  I have advised him of his

25  constitutional rights and --

Proceedings

1          THE COURT:  Very good, very good.  And now to

2   you, Mr. Nasriddinov.  Have you reviewed the affidavit

3   and complaint in support of the arrest warrant with your

4   lawyer?

5          DEFENDANT NASRIDDINOV:  Yes.

6          THE COURT:  And do you understand the charges

7   that are being made against you?

8          DEFENDANT NASRIDDINOV:  Yes.

9          THE COURT:  And Ms. Alvarez, have you reviewed

10  the complaint with your client?

11         MS. ALVAREZ:  Yes, your Honor.  And I'm

12  confident he's aware and --

13         THE COURT:  You're confident he understands it?

14         MS. ALVAREZ:  He understands everything, yes.

15         THE COURT:  And have you advised him of his

16  constitutional rights?

17         MS. ALVAREZ:  Yes, your Honor.

18         THE COURT:  And now to you, Mr. Dahlberg.  Have

19  you -- no.  Actually, Ms. Puzyreva, have you reviewed the

20  complaint with your attorney?

21         DEFENDANT PUZYREVA:  Yes, I did.

22         THE COURT:  And do you understand the charges

23  that are being made against you?

24         DEFENDANT PUZYREVA:  Yes, I did.

25         THE COURT:  Thank you.  And Mr. Dahlberg, have

Proceedings

1  you reviewed the complaint with your client?

2          MR. DAHLBERG:  Yes, your Honor.

3          THE COURT:  Do you believe she understands the

4  charges?

5          MR. DAHLBERG:  I do.

6          THE COURT:  And have you advised her of her

7  constitutional rights?

8          MR. DAHLBERG:  Yes, your Honor.

9          THE COURT:  Now, the Court has received a

10  detention memo meaning that the government has filed a

11  letter with the Court saying that you should be detained

12  pending your trial on these charges.  I'm not going to

13  repeat everything that's in the letter because I assume

14  that all of the lawyers have had that letter.  Is that

15  correct, Ms. Sacks?

16          MS. SACKS:  It is correct, your Honor.

17          THE COURT:  And Ms. Alvarez?

18          MS. ALVAREZ:  Yes, your Honor.

19          THE COURT:  And Mr. Dahlberg?

20          MR. DAHLBERG:  Yes, your Honor.

21          THE COURT:  And so I am just going to ask you,

22  Mr. McConnell to give me the highlights of the letter on

23  the record.  Please stand.  Thank you.

24          MR. McCONNELL:  Thank you, Judge.

25          The government believes that detention is

Proceedings

1  appropriate for all three of these defendants.  The risk

2  of flight for each of them is simply too great.  We're

3  not making any dangerousness arguments.  We believe that

4  the public law enforcement action that's been taken with

5  their arrests has neutralized the operation that they

6  were involved in.  But the risk of flight remains for all

7  three of these defendants.

8          The offense conduct in this case is obviously

9  very serious.  I'm not going to summarize it.  I think

10  the letter does that and the complaint certainly does as

11  well.  But I think the main point that I want to make

12  regarding the offense conduct is that the proof is very,

13  very strong and it's buttressed by communications amongst

14  these three defendants.  Communications which really

15  could not be more clear or unambiguous as to their

16  knowledge and their intent of the conduct that they were

17  engaged in.

18          With respect to each defendant, I'll just hit a

19  few of the highlights.

20          With respect to Ms. Puzyreva, she is obviously

21  married to her co-defendant, Mr. Goltsev.  She is in full

22  awareness of what he was doing at a company called

23  Electronic Network which was run out of Montreal, Canada,

24  where they both reside.  Earlier this year, Electronic

25  Network was sanctioned by the Department of Commerce

Proceedings

1   precisely for the conduct that is alleged in this
2   complaint.  Ms. Puzyreva used her name to be on one, at
3   least one front company that the government's aware of.
4   She used her name on several bank accounts that were used
5   in furtherance of the scheme.  The government's in
6   possession of conversations between her and her husband
7   regarding payments and shipments.  She made many
8   movements in structured deposits in furtherance of the
9   scheme as detailed in the complaint here in the United
10  States and has been surveilled as recently as two days
11  ago with the co-defendants at dinner.
12          With respect to Mr. Nasriddinov, he was really
13  in charge of running the logistics from Brooklyn to make
14  the scheme work.  He would receive packages at addresses
15  that he would control both at a restaurant and his
16  residence.  He would use his family members, frankly, to
17  repackage the items and send them to at least a dozen
18  different front companies that the government's been able
19  to identify where they were then transshipped to Russia.
20  Again, the conversations amongst the defendants makes it
21  very clear where the ultimate destination and who the
22  ultimate end user of these products are.
23          He does have an electrical engineering
24  background.  I believe he has a doctorate and is a
25  published author, so there's no mistake about the

Proceedings

1  character and use of the components, many of which are

2  dual use.  They can go in a washing machine just as well

3  as they can go into an unmanned aerial vehicle.  But he

4  has the apparent expertise to know that.

5          With respect to Mr. Goltsev, he has been

6  involved in this activity by the government's own

7  investigation for at least a decade with direct

8  communication between Russian military end users and

9  United States companies who both manufacture and

10  distribute various types of electronics.

11          Those relationships and some of those sales,

12  while not necessarily illegal prior to February of 2022

13  when new sanctions and export controls were rolled out,

14  he continued those relationships regardless, changed his

15  operations, began entering into the conspiracy with Mr.

16  Nasriddinov where they used the SH Brothers and later the

17  SN Electronic corporate entities to facilitate this

18  conduct.  And again, the communications make very clear

19  he knows what he's doing.  He uses aliases, more than

20  one.  He jokingly referred to them at one point as his

21  creative pseudonyms.  But he shows all the hallmarks of

22  fraud and deception which I think make detention really a

23  nonstarter for him in this case.

24          THE COURT:  You mean release.

25          MR. McCONNELL:  I'm sorry, being released.

Proceedings

1  Yes.

2          So that's the offense conduct and the strength

3  of the evidence.

4          With respect to each defendant's flight risk,

5  Mr. Nasriddinov is differently situated.  He's been in

6  Brooklyn for a number of years.  He does have strong

7  community ties.  His family is here.  The bail package

8  that has been presented is not something that we dismiss

9  out of hand.  However, I think it's notable that both the

10 house and the restaurant that he owns and controls were

11 both used in furtherance of the scheme.  His wife's name

12 is the registered name on one of the two shell companies.

13 His daughter is involved in the SH Brothers platform.

14         So the idea that the moral suasion exists when

15 he was so willing to involve his family in what he knew

16 to be criminal conduct I think is something that needs to

17 give the Court pause when evaluating that bail package.

18         He's also not a citizen of the United States.

19 He's a citizen of Russia and Tajikistan I believe,

20 neither of which has an extradition treaty with the

21 United States.

22         With respect to Ms. Puzyreva and Mr. Goltsev,

23 they are not U.S. citizens.  They have no ties to New

24 York.  They were here frankly in furtherance of the

25 conspiracy meeting with Mr. Nasriddinov.  $20,000 in cash

Proceedings

1 was recovered from their hotel room this morning.  I can

2 infer that it was money that was received pursuant to the

3 conspiracy since that's what has transpired on prior

4 visits because the government has surveilled them on

5 prior occasions when they had been here.

6          There are no ties.  They have ties to Russia,

7 again, which is a non-extradition country.  If the Court

8 takes their passports and puts them on electronic

9 monitoring, those bracelets can be removed.  They can

10 drive back to Canada without a passport and no one would

11 be the wiser.

12          So for all of those reasons, Judge, I think

13 that the government's motion is the only way to ensure

14 that these three defendants return to court.  Thank you.

15          THE COURT:  Before I go and ask everybody what

16 they have to offer, can I just question you a bit, Mr.

17 McConnell?

18          MR. McCONNELL:  Yes, absolutely.

19          THE COURT:  Again, I agree with you that the

20 allegations are very serious and that the government

21 seems to have quite a bit of evidence already from the

22 investigation.  The several questions I have is none of

23 these people have any criminal records from what Pretrial

24 has shown, and the idea that this is going to take a good

25 amount of time to get to trial.  I understand that there

Proceedings

1  may not be a bail package that they have proffered today,

2  but again, for people who have no criminal history -- I

3  agree with you, the risk of flight is great, Canada,

4  Russia, Canada being much closer and they can drive to.

5  And the point that was made in the detention letter is

6  that they could go into the Russian Embassy.  I didn't

7  even know the Russian Embassy was still open to tell you

8  the truth in New York, but that's the allegation that's

9  made in the letter and that they would be beyond capture

10 by the United States.

11         So I understand that a finding of risk of

12 flight only needs to be supported by a preponderance of

13 the evidence.  And I also understand that the defendants

14 are charged in a transnational sanctions and export

15 control scheme for the benefit of a foreign power that is

16 actively engaged in an armed conflict.  I understand that

17 they may be facing 63 to 78 months if they're convicted

18 and they're in category I.

19         But I also want to say that if there is

20 something presented where they could be released,

21 especially with no criminal history, I would want the

22 government to at least consider it.  It need not be

23 today.

24         MR. McCONNELL:  We were, and I relayed this to

25 counsel, we are always open to considering whatever

Proceedings

1  package is put forth.  What I've heard today so far

2  unfortunately is not sufficient.  I agree with the Court,

3  the lack of criminal record for all of these defendants

4  is significant.  It's something we consider.  But it's

5  only one factor that we have to balance.

6        THE COURT:  Okay.  Who wants to be heard?  Ms.

7  Sacks?

8        MS. SACKS:  Yes.  Based on my conversations

9  with my client and what we've heard in court, we're

10  willing to consent to detention without prejudice to a

11  future bail application.

12       THE COURT:  Well, you don't have to consent to

13  detention.  We can order that he be detained until such

14  time that you have something to present to the Court.

15  And I do want Mr. Goltsev to understand he does have

16  constitutional rights.  Remember, I've given you your

17  warnings about speaking with anyone other than your

18  attorney.  But you would be held at the Metropolitan

19  Detention Center.  She would be able to visit you there.

20  You would be able to work on your defense.  Again, if you

21  don't have something today to present, you have

22  unfettered ability to put this on the Court's calendar

23  and to make an application in the future.

24       MS. SACKS:  And that's all I want the Court to

25  know and also for my client's benefit, for him to

Proceedings

1   understand that at the time that we are able to put a

2   suitable package together, that we will be seeking bail

3   in this case.

4            THE COURT:  So again, as I said, it's because

5   of the risk of flight that this is a difficult case for

6   the defendants because you have no ties to this country

7   and you do have ties to foreign countries.  So that's

8   what's difficult for your client to overcome.

9            And so again, I am going to order that you be

10  detained pending trial.  And I am going to say that you

11  can come back at any point in time where there is a basis

12  to do so.

13           What is Mr. Goltsev's position with respect to

14  a preliminary hearing?

15           DEFENDANT GOLTSEV:  I do agree.

16           THE COURT:  Excuse me?

17           DEFENDANT GOLTSEV:  I do agree.

18           THE COURT:  Have you discussed preliminary

19  hearing with him, Ms. Sacks?

20           MS. SACKS:  I have not.

21           DEFENDANT GOLTSEV:  Oh, you mean compared to

22  the -- I'm sorry, I think I didn't get --

23           THE COURT:  I don't think you did, sir.

24           DEFENDANT GOLTSEV:  Yeah.  Sorry.

25           THE COURT:  Your lawyer is going to talk to

Proceedings

1  you.

2          MS. SACKS:  Yes.

3          THE COURT:  And I'll come back to you on that.

4          DEFENDANT GOLTSEV:  Sure.

5          MS. SACKS:  Yes.

6          THE COURT:  Okay?  Okay.  So now I'm turning to

7  you, Ms. Alvarez.

8          MS. ALVAREZ:  Your Honor, my client has strong

9  ties to the community which is considered by the

10 government.  He is a legal resident possessing his green

11 card.  His family are naturalized citizens.  His wife and

12 his daughter are present today.  I have had continuous

13 contact with his two other children.  They're all

14 enrolled in college here in New York State.

15          We are presenting his home, which is the

16 marital residence, which has a value estimated at 1.2

17 million.  Possibly 1 -- the market is such that Brooklyn

18 properties are going I think --

19          THE COURT:  I'm not worried about the Brooklyn

20 properties.

21          MS. ALVAREZ:  Right.  We also --

22          THE COURT:  I'm worried about the connections,

23 the businesses in his wife's name that they're making I

24 think it's $7 million was the --

25          MS. ALVAREZ:  I heard the allegations, your

Proceedings

1  Honor.  Of course counsel for the government is in

2  possession of all the discovery which obviously we have

3  not had an opportunity to review.  I've discussed --

4           THE COURT:  And you see in the detention letter

5  at the bottom of page 2 it says, "During the period

6  charged in the complaint, SH Brothers has been one of the

7  largest exporters of integrated circuits to Russia via

8  third country transshippers.  Indeed, in or about and

9  between August 2022 and September 2023 SH Brothers made

10  over 266 shipments of electronic components valued at

11  approximately $7,174,693 that were sent to known third

12  country transshipment entities and then sent to Russia."

13  It doesn't mean he made $7 million.  But this was a large

14  enterprise.

15           MS. ALVAREZ:  I understand the allegations that

16  are against my client, your Honor, and I've addressed

17  them and he's well aware of the severity of them.  He

18  stands firm as to his innocense and is set to fight this

19  matter and not leave.  His family is here.

20           Yes, he did go back and forth for some time

21  overseas while he was finishing that Ph.D. which was not

22  in electrical engineering.  It was in fact in economics.

23  His undergraduate degree was in civil engineering, so he

24  knows how to make highways according to his statement to

25  Pretrial Services.

Proceedings

1          His children are here.  His children are not

2   going back to Russia or Uzbekistan or any foreign entity.

3          THE COURT:  How many children does he have?

4          MS. ALVAREZ:  Excuse me, your Honor?

5          THE COURT:  How many children does he have?

6          MS. ALVAREZ:  He has three children, your

7   Honor.

8          THE COURT:  And the daughter that's here is

9   alleged to be in the business with him.

10         MS. ALVAREZ:  That was an allegation that --

11  you know, I have addressed it.  It's my understanding

12  that agents interviewed her today.  I'm not sure whether

13  she had counsel present or not or whether she is a target

14  of this investigation.  I have suggested that in the

15  future she should have counsel present if she is going to

16  be questioned again.

17         His three children are enrolled in college here

18  in New York State.  There is also a suretor that is

19  willing to sign a bond.  And we would submit to --

20         THE COURT:  Who's the suretor that's willing --

21         MS. ALVAREZ:  His cousin is a business

22  associate in a different business, a restaurant, your

23  Honor.  He also has a trucking company that are not

24  subject -- the restaurant is --

25         THE COURT:  I'm sorry, I'm not understanding

Proceedings

1  who the people are.  You said his wife and his daughter

2  who are here.

3          MS. ALVAREZ:  Are here.

4          THE COURT:  Would be willing to sign.  But

5  they're not willing to --

6          MS. ALVAREZ:  Well, my understanding is from

7  Pretrial Services they would not want the children to do

8  so because they're involved in college and that would be

9  an undue burden on them.  So therefore, there is a cousin

10 who should be on the line who's --

11         THE COURT:  What about the wife?

12         MS. ALVAREZ:  The wife, I would be able to sign

13 for him.  I'm just not sure if she would qualify.

14         THE COURT:  I don't know that she would either

15 because she has her name on a business that's associated

16 with this.

17         MS. ALVAREZ:  Hence the reason why it's --

18         THE COURT:  But she owns the home with him.  So

19 if you're putting up the home, you have to have both

20 people who own the home.

21         MS. ALVAREZ:  The home is held only in my

22 client's name.

23         THE COURT:  Okay.

24         MS. ALVAREZ:  Although it is a marital asset,

25 so she would sign as well because I mean realistically --

Proceedings

1          THE COURT:  Okay.  Who else do you have?

2          MS. ALVAREZ:  The cousin.  The cousin who

3    should be on the line whose photo identification we

4    provided to the Court.  And I've also --

5          THE COURT:  Where is the cousin?

6          MS. ALVAREZ:  He's located in Brooklyn and

7    right now is probably driving towards the courthouse

8    because I advised to please have him moving here.

9          THE COURT:  Again, just for future reference --

10          MS. ALVAREZ:  Yes.

11          THE COURT:  -- anybody who's signing a bond,

12    unless they are located --

13          MS. ALVAREZ:  Yes.

14          THE COURT:  -- in another part of the world,

15    they must be here.  I'm not taking people by phone.

16          MS. ALVAREZ:  I understand that, your Honor.

17          THE COURT:  So the cousin does what?  Has

18    another restaurant you said?

19          MS. ALVAREZ:  They own a restaurant, yes.

20          THE COURT:  They?  It's one or more people?

21          MS. ALVAREZ:  They being my client owns the

22    restaurant together with his cousin.  And he --

23          THE COURT:  So the cousin doesn't have another

24    business?

25          MS. ALVAREZ:  I'm not sure of what his --

Proceedings

1          THE COURT:  So this is the Tandoori Restaurant?

2          MS. ALVAREZ:  Yes.  And he was spoken to by

3   Pretrial Services as well and was identified as a

4   resource to sign the bond.

5          THE COURT:  Okay.  Who else?

6          MS. ALVAREZ:  Those are the individuals we

7   believe that would satisfy --

8          THE COURT:  That's one person.

9          MS. ALVAREZ:  Well, that and then the home and

10  then --

11         THE COURT:  That's not going to be sufficient,

12  Ms. Alvarez.

13         MS. ALVAREZ:  What about electronic monitoring,

14  your Honor?

15         THE COURT:  Oh, that's always going to be part

16  of this, but that's not going to be sufficient to have

17  the cousin who's in business with him sign the bond.

18  That's not sufficient.

19         The concern, Ms. Alvarez, is not his criminal

20  past but that this is a big money enterprise so he has

21  access to money.  And as much as he may want his kids to

22  stay, I don't know, they may be United States citizens.

23  He's not.  He has ties to Tajikistan and to Russia.  And

24  again, I understand that it would be a lot for him to

25  leave the country, I do, but that's the problem.  He's

Proceedings

1  the one that is accused of this federal crime.

2          MS. ALVAREZ:  I understand.

3          THE COURT:  It's not his children and it's not

4  his wife at this point.

5          MS. ALVAREZ:  I understand that, your Honor.

6  The Court is in possession of his two passports.  If

7  there's location services and there is a concern that he

8  would walk into the embassy --

9          THE COURT:  I'm saying one suretor is not

10 enough, Ms. Alvarez.  So I don't think you want me to

11 deny a bail package.

12         MS. ALVAREZ:  No, I understand that.

13         THE COURT:  I think that you want to take your

14 time to put together -- because if he's been here for a

15 number of years and he has other people who are outside

16 of his businesses, so not people that are beholden to him

17 because he is in business with them where money is

18 fungible.

19         MS. ALVAREZ:  No problem, your Honor.  I

20 understand.

21         THE COURT:  So again, in this court you are

22 still presumed innocent and you're entitled to make a

23 bail application.  But what I'm saying is because you're

24 ties are to two foreign countries where there is no

25 agreement to bring you back should you flee, this Court

Proceedings

1  has to make sure that any application is well supported

2  and is not just people who you're very close to and they

3  owe you something.  One person is not enough.  Even if he

4  was in court today, I wouldn't release you on one

5  signature.  You're going to -- how many years has your

6  client been in this country?

7           DEFENDANT NASRIDDINOV:  It's on my eighth year.

8           THE COURT:  So you should have more than one

9  person willing to stand up for him.

10          DEFENDANT NASRIDDINOV:  Will my wife and my

11 cousin be enough to sign?

12          THE COURT:  No.

13          MS. ALVAREZ:  Your Honor, I'm going to ask if

14 the interpreter can --

15          THE COURT:  Stay after to talk with --

16          MS. ALVAREZ:  Yes.

17          THE COURT:  So what I'm saying, and your lawyer

18 doesn't want you to speak because then you can't take it

19 back, but your wife is disqualified because you put her

20 name on the business.  She might have to sign because if

21 you're putting up your house, even if you're the sole

22 owner of the house in the United States because she's

23 your wife, she has rights to the house.  If you were to

24 pass away, she would have rights to the house.  It's not

25 working again.  You'll explain this to him.

Proceedings

1          THE INTERPRETER:  It's working again.

2          THE COURT:  Okay.  So your wife and your cousin

3   would not be sufficient, no.  The problem is really that

4   you have ties to two foreign countries not because you

5   have been convicted of any crime before, but you have to

6   establish that you are not going to be a risk of flight.

7   Okay?

8          All right.  So Mr. Dahlberg?

9          MR. DAHLBERG:  Thank you, your Honor.  Ms.

10  Puzyreva is asking for the Court to release her on

11  conditions.  Our package is a little different than her

12  co-defendant.  We unfortunately don't have a surety to

13  offer who is based in the United States, but we would

14  propose that the Court release her on the condition that

15  she surrender her passports, that she be placed on

16  location monitoring, and that she reside at the same

17  hotel where she was arrested until she can secure a more

18  permanent residence in the New York City area, and be

19  placed on location monitoring.

20          The reason that we're here making this package

21  today, one of the principal reasons, your Honor, is that

22  Ms. Puzyreva works full time.  She works for a menswear

23  apparel company called Psycho Bunny.  She works remotely

24  four days a week but has to check in and go in in person

25  one day a week.  Her company has an office in Manhattan

Proceedings

1  so she would be able to go into the office in Manhattan

2  and then work remotely the other days.  But she's at risk

3  of losing her job, your Honor, if she were to be detained

4  even for the time that might be necessary to put a

5  different package together.  But we believe that she

6  would qualify for release for -- there's a couple of

7  reasons.

8          I think number one, Ms. Puzyreva's differently

9  situated from her co-defendants so much so I think that I

10  don't believe the government has made a showing that

11  there's even a serious risk of flight in this case under

12  3142(f)(2)(A).  Yes, Ms. Puzyreva has ties to another

13  country.  She has family in Russia.  We don't dispute

14  that.  But I don't think she has the same degree of

15  connection especially as it relates to the business

16  that's implicated in the complaint such that --

17          THE COURT:  It does say that she made numerous

18  bank -- she utilized numerous bank accounts to make

19  financial transactions in furtherance of the scheme.  So

20  they used her to sort of put -- money launderer is what

21  the essence of the complaint is.  I'm not trying to speak

22  for the government, but that's what the allegation is.

23          MR. DAHLBERG:  And I'll address that, your

24  Honor.  I think in furtherance of the scheme, I mean I

25  have not heard the government present specific evidence

Proceedings

1  to support that conclusion that deposits were made in

2  furtherance of the scheme.  Certainly, we're not

3  disputing, at least for purposes of today, that Ms.

4  Puzyreva had her name on different bank accounts that she

5  made and had her name on, I believe the government

6  referred to it as a front company, that she was involved

7  in financial transactions.  The financial transactions by

8  themselves aren't enough to indicate that she even had

9  the requisite knowledge that the components were being --

10 that the end user, the end destination of these

11 components was to Russia.

12         I've looked at the complaint, I've looked at

13 the allegations that are in the detention memo.  There's

14 a couple of specific text message exchanges mentioned

15 between Ms. Puzyreva and I believe her husband.  I did

16 not see, and I have not heard the government come forward

17 with any specific allegation that Ms. Puzyreva was aware

18 of where these components were going or that they were

19 specifically going to Russia.

20         THE COURT:  But they do say that she's received

21 over 130 packages at her Canadian address from the U.S.

22 electronics distributors over the past five years.  And

23 if her business is menswear, then she's certainly got a

24 sideline here.  And they're saying that she's the named

25 principal of Simatech Group which is affiliated with the

Proceedings

1   electronic network.  So she's not completely out of the

2   scheme here.

3           MR. DAHLBERG:  And I don't mean to argue that

4   she's completely out of it, that she didn't have a

5   connection, your Honor.  As I mentioned, she's a

6   signatory on the bank account.  I take the government's

7   proffer that she was depositing significant amounts of

8   money at ATMs especially when she was here in New York.

9           But receiving components and receiving packages

10  at her residence in Canada I don't believe is sufficient

11  for us to infer that she had knowledge of where these

12  components were going.

13          And I just mention that, your Honor, not to get

14  into a mini-trial or anything like that, but I do think

15  it goes to the weight of the evidence here and I do think

16  it's significant and it differentiates Ms. Puzyreva

17  compared to --

18          THE COURT:  I would agree with that but also

19  I'm afraid, and I'd give Mr. McConnell a chance to

20  address it, I'm afraid of several things.

21          One, she has what Mr. Goltsev has, so their

22  residence, their vehicle, all of that's the same.  The

23  proffer that she could get up to Canada and be out of the

24  country, Canada has extradition with the United States

25  but Russia does not.  So again, the concern is that if we

Proceedings

1 let her out at all, that she will not come back to face

2 these charges.

3          I do note that she has a thyroid condition,

4 she's taking a medicine, that the only reason why she

5 would be held is because of her ties to Canada and

6 Russia.  I don't know, she was arrested at a hotel.  I

7 know nothing about this.  So he's suggesting that if she

8 was electronically monitored and could stay at the hotel,

9 she could work at the Manhattan office with permission of

10 Pretrial.  They'd know the address of the office.  They'd

11 be able to check the address of the office.  She'd be

12 able to work from the hotel and go to that job so that

13 she wouldn't lose the job.

14          That's what you're offering.  Nobody else

15 signing onto this.  There's nobody in North America that

16 would sign for your client?

17          MR. DAHLBERG:  Not at this time, your Honor.

18 And I don't want to foreclose that in the future.

19          THE COURT:  How long has she been in Canada?

20          MR. DAHLBERG:  She's lived there I believe

21 since -- 14 years, your Honor.  So she --

22          THE COURT:  And there's not another person

23 except her husband, who's accused here, who would stand

24 up for her?

25          MR. DAHLBERG:  Your Honor, she has I believe

Proceedings

1    one family member in the United States.  She has

2    coworkers who I have not attempted to speak with yet.

3    And so I don't want to say that we wouldn't be coming

4    back with a different package --

5              THE COURT:  Yes, but you're asking me to let

6    her out just on her signature which gives me pause when

7    there's nobody else on the hook and she could cut off the

8    monitor and be gone.

9              MR. DAHLBERG:  I understand, your Honor.  I

10   don't think there's been anything presented that would

11   suggest that Ms. Puzyreva is a risk of doing that.  And

12   the reason I say that, yes, she has ties to Russia and

13   that she was born there and her family is there.  There's

14   been nothing presented that she is having business

15   related communications with individuals in Russia.

16             THE COURT:  I understand.  But the

17   investigation sort of came to a head quickly it seems

18   because Ms. Puzyreva and Mr. Goltsev were visiting.  I

19   don't know the extent of the investigation.  I only know

20   what's in the warrants.

21             MR. DAHLBERG:  I agree, but it's the

22   government's burden to demonstrate a serious risk of

23   flight in the first instance.

24             THE COURT:  And you saw what the Pretrial

25   Services report said which is that they recommend

Proceedings

1   detention as there's no condition or combination of

2   conditions.  And I take what Pretrial Services says, I

3   don't have to agree with it and I can go against it.  So

4   you've given me the most persuasive argument of the three

5   but I'm not all there, Mr. Dahlberg.  Again, if she has

6   anybody in the United States who could sign for her, I'd

7   be more inclined.

8          MR. DAHLBERG:  And if your Honor would permit

9   us to return in the future if we are able to identify

10  someone, I'd appreciate it.

11         THE COURT:  Of course.  Mr. McConnell, do you

12  want to be heard on this?

13         MR. McCONNELL:  No.  I think your Honor sort of

14  highlighted the issue which is that there is no one here

15  who can provide adequate surety.  I think the hotel

16  arrangement --

17         THE COURT:  But what else would she do?  She

18  doesn't live here.  She was only visiting.  And I am

19  loathe to make somebody who could be innocent lose her

20  job.

21         MR. McCONNELL:  And the government is as well.

22  We're mindful of that.  The risk of flight is simply too

23  great.  And certainly if there's a more substantial

24  package that involves individuals who can provide

25  adequate surety, we will consider it as will the Court.

Proceedings

1          THE COURT:  Again, they don't have to be rich.

2    But after 14 years of living in a country that nobody

3    who's willing to say this person will come back to face

4    the charges gives the Court pause.

5          MR. DAHLBERG:  And she certainly has plenty of

6    individuals in Canada, your Honor.  She's lived there for

7    a long time.  She's demonstrated a lot of stability in

8    her life.

9          THE COURT:  Well again, if people in Canada are

10   willing to give us their credentials over the phone and

11   they have substantial assets and you get it with the

12   government -- again, I'm being very insistent with Ms.

13   Alvarez because she was having somebody from Brooklyn

14   appear by phone.  But we've always had people in foreign

15   destinations hope can, even before COVID, appear by

16   phone.  But we have to have their driver's license, their

17   passport.  Somebody who I'm speaking to on the phone, how

18   am I going to verify they are anybody I know is a bona

19   fide suretor?  And Canada is not all that far that if

20   somebody really wanted to stand up for her, they could

21   come and make a bail application.

22          MR. DAHLBERG:  Understood.

23          THE COURT:  Okay.  So now I'm going back on

24   preliminary hearing starting with you, Ms. Sacks.  Have

25   you discussed preliminary hearing with Mr. Goltsev?

Proceedings

1          MS. SACKS:  I have, your Honor.

2          THE COURT:  And?

3          MS. SACKS:  And the government has 14 days and

4    we'll --

5          THE COURT:  We're either scheduling it today

6    for a preliminary hearing or you're waiving preliminary

7    hearing.  Those are the choices.

8          MR. DAHLBERG:  Your Honor, maybe this will

9    help.  I know Ms. Puzyreva, we're requesting a

10   preliminary hearing.  That may answer the question if

11   they want to join in at the same time.

12         THE COURT:  That's fine.

13         THE CLERK:  So November 9th at 11 a.m.

14         MS. SACKS:  We would join in that application.

15         MS. ALVAREZ:  I would join.  I just need to

16   check that that date would work.  A moment, your Honor.

17   I apologize.  That's fine, your Honor.

18         THE COURT:  So again, a preliminary hearing is

19   requested by all three defendants and they are put on

20   notice that that sometimes means that the government will

21   go get an indictment before the preliminary hearing.  And

22   if the government gets an indictment, you'll be brought

23   back to be arraigned on the indictment.  Otherwise,

24   you'll be brought to court for a preliminary hearing on

25   that date.  And it's to whoever was on duty on that date

Proceedings

1    I believe.  Correct, Michelle?  We're back to doing it as
2    a duty magistrate function.

3             So was there anything else that needed to be
4    addressed on behalf of the United States with respect to
5    Mr. Goltsev, Mr. Nasriddinov, and Ms. Puzyreva?

6             MR. McCONNELL:  No, not from the government.
7    Thank you.

8             THE COURT:  Was there anything else, Ms. Sacks,
9    that needed to be addressed on behalf of your client?

10            MS. SACKS:  No, your Honor.  I would just note
11   that he is on a specific medication for his stomach which
12   he has with him.  So --

13            THE COURT:  They're not going to let that into
14   the jail.  And so the best that we could do is we'll give
15   you a medical memo and you should write down what the
16   prescription is.  And then they will give him something
17   that is an equivalent at the facility.  And he should
18   know that he should contact you if he's having problems
19   getting his medication.

20            MS. SACKS:  Yes, your Honor.

21            MS. ALVAREZ:  Your Honor, we need a medical
22   notation on my client as well.  All his medication was
23   taken into custody by the agents so they are actually in
24   possession of them.

25            THE COURT:  Do you have those medications?

Proceedings

1          UNIDENTIFIED SPEAKER:  We do, your Honor.

2          THE COURT:  Okay.  If you can give them to

3   counsel so counsel can list them all on a sheet?

4          UNIDENTIFIED SPEAKER:  Yes, your Honor.

5          THE COURT:  Because they won't let the

6   medications go into the facility.

7          MS. ALVAREZ:  Understood.  I just --

8          THE CLERK:  I just need an email from each --

9          UNIDENTIFIED SPEAKER:  Yes, your Honor.

10          THE CLERK:  I need an email from each defense

11   counsel with their medications and what we need --

12          THE COURT:  With the list of the medications

13   and she'll put it in the memo.

14          THE CLERK:  And marshals, I need their marshal

15   numbers.  Thank you.

16          THE COURT:  Okay.  And we'll get their marshal

17   numbers so that we'll have that.  And do you have

18   something as well?

19          MR. DAHLBERG:  Yes, your Honor.  Same

20   situation, a medical order, which I'll email to --

21          THE COURT:  Wonderful.

22          MS. ALVAREZ:  And your Honor, I would just ask

23   that if the interpreters could stick around so I can

24   speak to Mr., I'm going to butcher it again, Nasriddinov,

25   again and re-address the hearing.  I just want to have a

Proceedings

1  chance to --

2  THE CLERK:  Quickly.

3  MS. ALVAREZ:  -- speak to him with an

4  interpreter.

5  THE CLERK:  They have to go to --

6  THE COURT:  Well, they should be able to let

7  you into the back with the interpreter.  No?  Marshals,

8  would that work out?

9  UNIDENTIFIED SPEAKER:  Yes.

10  THE CLERK:  It's okay for you guys?  Okay.

11  THE COURT:  Okay.  And one last thing just so

12  it's on the record, I'm reminding the government of their

13  obligation under *Brady v. Maryland* and pursuant to

14  Federal Rule of Criminal Procedure 5(f) to disclose to

15  the defense all information, whether admissible or not,

16  that is favorable to the defendant, material either to

17  guilt or to punishment, and known to the prosecution.

18  The prosecution must make good faith efforts to disclose

19  such information to the defense as soon as reasonably

20  possible.

21  I will enter a written order more fully

22  describing this obligation and the possible consequences

23  of failing to meet it.  And I direct the prosecution to

24  review and comply with that order.

25  Does the prosecution confirm that it

Proceedings

1  understands its obligations and will fulfill them?

2          MR. McCONNELL:  Yes, we do.

3          THE COURT:  Thank you.  Okay.  With that, we

4  are adjourned.  Thank you.

5          THE CLERK:  Thank you, all.

6          MR. DAHLBERG:  Thank you, Judge.

7          THE COURT:  I think I signed everything.

8                     (Matter concluded)

9                          -oOo-

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

# C  E  R  T  I  F  I  C  A  T  E

I, MARY GRECO, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **6th** day of **November**, 2023.

_Mary Greco_

Transcriptions Plus II, Inc.