DMP:JAM/EHS
F. #2022R00963

FILED
IN CLERK'S OFFICE
US DISTRICT COURT
E.D.N.Y.
* NOVEMBER 06, 2023 *
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against –

NIKOLAY GOLTSEV,
SALIMDZHON NASRIDDINOV,
KRISTINA PUZYREVA,
VLADIMIR BOCHKAREV
PAVEL CHERNIKOV,
YEKATERINA VETOSHKINA and
OLEG ZENCHENKO,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

Cr. No. __23-CR-452__

(T. 13, U.S.C., §§ 305(a)(1) and
305(a)(3); T. 18, U.S.C., §§ 371,
554(a), 981(a)(1)(C), 982(a)(1),
982(b)(1), 1343, 1349, 1956(h), 2
and 3551 et seq.; T. 21, U.S.C.,
§ 853(p); T. 28, U.S.C., § 2461(c);
T. 50, U.S.C., §§ 4819(a)(1),
4819(a)(2)(A)-(G), 4819(b),
4819(d)(1) and 4819(d)(2);
T. 15, C.F.R., §§ 736.2(b)(1),
746.5(a)(1)(ii), 746.8(a)(1) and
764.2)

Judge LaShann DeArcy Hall
Magistrate Judge Taryn A. Merkl

THE GRAND JURY CHARGES:

## INTRODUCTION

At all times relevant to this Indictment, unless otherwise indicated:

I.    The Defendants and Relevant Entities

        1.    OOO[1] Radioavtomatika ("Radioavtomatika") was a Russian defense

procurement firm based in Moscow, Russia that specialized in procuring foreign items,

including U.S.-origin items, for Russia's defense industry.  On or about March 3, 2022,

following Russia's invasion of Ukraine, the U.S. Department of Commerce's ("DOC")

---

[1]    "OOO" is the abbreviation for the Russian business entity type, "общество с
ограниченной ответственностью," which means limited private company and is roughly
the equivalent of a limited liability company or LLC in the United States.

Bureau of Industry and Security ("BIS") added Radioavtomatika to its Entity List, which identifies foreign parties that are subject to additional export restrictions and license requirements. See 87 Fed. Reg. 13141 (Mar. 9, 2022). Also on or about March 3, 2022, pursuant to Executive Order 14024, the U.S. Department of the Treasury's Office of Foreign Assets Control ("OFAC") added Radioavtomatika to its Specially Designated Nationals and Blocked Persons ("SDN") List; U.S. persons are generally prohibited from dealing with individuals and entities on the SDN List.

2.      OOO Testkomplekt ("Testkomplekt") was a Moscow-based electronic components distributor specializing in semiconductors and microelectronics that was established in or about 2016. Testkomplekt has held a variety of contracts with Russian military entities, including State Corporation Rostec, a Moscow-based defense conglomerate. On or about May 19, 2023, pursuant to Executive Order 14024, OFAC added Testkomplekt to its SDN List.

3.      OOO NEVA-EKB ("EKB-Neva") was a Moscow-based supplier of electronic components, including radio components, microcircuits, connectors, resonators, diodes, capacitators and resistors. On or about May 19, 2023, pursuant to Executive Order 14024, OFAC added EKB-Neva to its SDN List.

4.      The defendant NIKOLAY GOLTSEV was a Russian national who resided in Canada. GOLTSEV served as an account manager and purchasing coordinator for Electronic Network, Inc. ("Electronic Network"), a company based in Montreal, Canada. On or about February 24, 2023, BIS added Electronic Network to its Entity List. See 88 Fed. Reg. 12170 (Feb. 27, 2022).

5. The defendant SALIMDZHON NASRIDDINOV was a dual national of Russia and Tajikistan who resided in Brooklyn, New York. NASRIDDINOV was a published author regarding integrated systems and other electronic technologies. On or about June 11, 2021, NASRIDDINOV founded SH Brothers Group Inc. ("SH Brothers"), a company with listed addresses in Brooklyn, New York. On or about January 30, 2023, NASRIDDINOV founded SN Electronics, Inc. ("SN Electronics"), a company with listed addresses in Brooklyn, New York. SN Electronics was registered in NASRIDDINOV's wife's name.

6. The defendant KRISTINA PUZYREVA was a Russian national who resided in Canada. PUZYREVA was married to the defendant NIKOLAY GOLTSEV.

7. The defendant VLADIMIR BOCHKAREV was a Russian national who resided in Russia. BOCHKAREV conducted procurement operations for multiple Russian entities through Suntronic F.Z.E. ("Suntronic"), a front company in the United Arab Emirates ("UAE").

8. The defendant PAVEL CHERNIKOV was a Russian national who resided in Russia and conducted procurement operations for Testkomplekt.

9. The defendant OLEG ZENCHENKO was a Russian national who resided in Russia and conducted procurement operations for EKB-Neva.

10. The defendant YEKATERINA VETOSHKINA was a Russian national who resided in Russia and served as the procurement manager for Radioavtomatika. In or about August 2022, VETOSHKINA left Radioavtomatika and began working for another Moscow-based electronics distributor, OOO Komtech ("Komtech").

II.     The Export Control Reform Act and Export Administration Regulations

11.     On August 13, 2018, the President signed into law the National
Defense Authorization Act of 2019, which included the Export Control Reform Act
("ECRA"). See 50 U.S.C. § 4801 et seq. ECRA provided permanent statutory authority
for the Export Administration Regulations ("EAR"), Title 15, Code of Federal Regulations,
Parts 730-774.

12.     ECRA provided that "the national security and foreign policy of the
United States require that the export, reexport, and in-country transfer of items, and specified
activities of United States persons, wherever located, be controlled." 50 U.S.C. § 4811. To
that end, ECRA granted the President the authority to "(1) control the export, reexport, and
in-country transfer of items subject to the jurisdiction of the United States, whether by
United States persons or foreign persons; and (2) the activities of United States persons,
wherever located, relating to" specific categories of items and information. 50 U.S.C.
§ 4812. ECRA granted to the Secretary of Commerce the authority to establish the
applicable regulatory framework. 50 U.S.C. § 4813.

13.     Through the EAR, BIS reviewed and controlled the export from the
United States to foreign destinations of certain items. In particular, BIS placed restrictions
on the export and reexport of items that it determined could make a significant contribution
to the military potential or nuclear proliferation of other nations or that could be detrimental
to the foreign policy or national security of the United States. Under the EAR, such
restrictions depended on several factors, including the technical characteristics of the item,
the destination country, the end user and the end use of the item.

14. The most sensitive items subject to EAR controls were identified on the Commerce Control List ("CCL") set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1. Items listed on the CCL were categorized by Export Control Classification Number ("ECCN"), each of which was subject to export control requirements depending on destination, end use and end user of the item.

15. Since February 24, 2022, BIS has implemented a series of stringent export controls that restrict Russia's access to the technologies and other items that it needs to sustain its attack on Ukraine. As of April 8, 2022, license requirements for exports, reexports and transfers to or within Russia were expanded to cover all items on the CCL. See 87 Fed. Reg. 12226 (Mar. 3, 2022); 87 Fed. Reg. 22130 (Apr. 14, 2022); 15 C.F.R. § 746.8.

16. On March 3, 2022, BIS imposed additional license requirements for exports, reexports and transfers to or within Russia of any items subject to the EAR that were identified under certain Schedule B or Harmonized Tariff Schedule 6 ("HTS") numbers. See 87 Fed. Reg. 12856 (March 8, 2022); 15 C.F.R. Part 746, Supp. No. 4. HTS codes took their first six digits from the corresponding Harmonized System ("HS") code, which was a standardized numerical method of classifying traded products that was used by customs authorities around the world.

17. On September 14, 2023, working in conjunction with the United Kingdom and European Union, BIS published a "Common High Priority Items List," which identified items by their corresponding HS codes that Russia sought to procure for its weapons programs. See https://www.bis.doc.gov/index.php/all-articles/13-policy-guidance/country-guidance/2172-russia-export-controls-list-of-common-high-priority-items.

According to BIS, these priority items posed a heightened risk of being diverted illegally to Russia because of their importance to Russia's war efforts.

18.    Through the EAR, BIS also published the Entity List, which identified certain foreign persons—including businesses, research institutions, government and private organizations, individuals and other types of legal persons—that were subject to specific export license requirements and policies, in addition to those found elsewhere in the EAR, due to a determination that such persons had engaged in activities contrary to U.S. national security and/or foreign policy interests.  See 15 C.F.R. § 744.11; 15 C.F.R. Part 744, Supp. No. 4 (the Entity List).

19.    An exporter generally was required to file Electronic Export Information ("EEI") through the Automated Export System ("AES") where, among other reasons, an export license was required or the value of the commodity being exported was more than $2,500.  15 C.F.R. § 758.1.  The EEI required an exporter to list, among other things, the destination country, the ultimate consignee's name and address, the intermediate consignee's name and address, and a description of the commodity to be exported.  Failure to file EEI or providing false or misleading information in EEI was a violation of ECRA (see, e.g., 50 U.S.C. 4819(a)(2)(F)), the EAR (see 15 C.F.R. Part 758), 13 U.S.C. § 305 and the Foreign Trade Regulations (see 15 C.F.R. Par 30).

20.    Under ECRA, it was a crime to willfully violate, attempt to violate, conspire to violate or cause a violation of any regulation, order, license or authorization issued pursuant to the statute, including the EAR.  See 50 U.S.C. § 4819(a)(1).

III.    The Defendants' Criminal Scheme

    A.    Overview

    21.    Since at least in or about January 2022, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, used the SH Brothers corporate entity to unlawfully source, purchase and export to Russia millions of dollars of dual-use electronics from U.S. manufacturers and distributors located in the Eastern District of New York and elsewhere. Many of these items required a license from BIS to be exported to Russia. Even for items that did not require such a license, the defendants made and caused to be made false and misleading statements in EEI to conceal the fact that Russia was the ultimate end destination and that certain entities and individuals in Russia were the ultimate end users.

    22.    To effectuate the scheme, the defendants NIKOLAY GOLTSEV and SALIMDZHON NASRIDDINOV sourced and purchased U.S.-origin electronics through SH Brothers at the direction of Russian procurement agents, including the defendants VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO.

    23.    Specifically, the defendants VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA, OLEG ZENCHENKO and others received orders from Russian end users in the defense and technology sectors who sought to acquire particular items or parts from the United States. These requests were then then relayed to the defendant NIKOLAY GOLTSEV, who communicated directly with U.S. manufacturers and distributors, typically using aliases such as "Nick Stevens" and "Gio Ross." In those

communications, GOLTSEV misrepresented and omitted material information, including information about how the items would be used, the various parties involved in the transactions and the identities of the ultimate Russian end users.

24.     The defendants NIKOLAY GOLTSEV and SALIMDZHON NASRIDDINOV then purchased the items, including electronic components and integrated circuits, from U.S. companies.   NASRIDDINOV received the items at various addresses in Brooklyn, New York, where he supervised their repackaging and export.   GOLTSEV and NASRIDDINOV exported these items from the United States and transshipped them to Russia and Russian end users, including Radioavtomatika, Komtech, Testkomplekt and EKB-Neva, through a variety of intermediary companies in Turkey, Hong Kong, China, India, the UAE and elsewhere.   Some of these intermediary companies received U.S. exports solely from SH Brothers, including Robotronix Semiconductors LTD ("Robotronix"), which was listed as an intermediate consignee on approximately 32 shipments valued at more than $600,000, ostensibly for end users in China.   BIS added Robotronix to its Entity List on October 6, 2023.   See 88 Fed. Reg. 70352 (Oct. 11, 2023).

25.     Some of the electronic components and integrated circuits sourced, purchased and exported by the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO were designated as "Tier 1" items on the Common High Priority Items List, which, according to BIS, were of the highest concern due to their critical role in the production of advanced Russian precision-guided weapons systems, Russia's lack of domestic production, and limited global manufacturers.   Indeed, some of the same electronic components exported by the defendants

through SH Brothers were found in seized Russian weapons platforms and signals intelligence equipment in Ukraine, including the Torn-MDM radio reconnaissance complex, the RB-301B "Borisoglebsk-2" electronic warfare complex, the Vitebsk L370 airborne counter missile system, Ka-52 helicopters, Orlan-10 unmanned aerial vehicles ("UAVs") and T-72B3 battle tanks.

26.     The defendants were aware that the electronics being shipped had potential military applications.   In a February 23, 2023 message, the defendant SALIMDZHON NASRIDDINOV wrote to the defendant NIKOLAY GOLTSEV, "Happy Defender of the Fatherland," referring to the holiday in Russia and parts of the former Soviet Union celebrating those who served in the armed forces.   NASRIDDINOV attached to the message a screenshot showing activity in an SH Brothers bank account.   GOLTSEV responded, "happy holiday to you too my friend, we are defending it in the way that we can [smile emoji]."

27.     To effectuate the scheme, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA, OLEG ZENCHENKO and their co-conspirators made and caused to be made material misrepresentations and omissions, both orally and in writing, with respect to invoices, end-use statements, EEI filings, financial records and shipping documents, among other items, to conceal the nature of these illicit procurement transactions.   By doing so, the defendants and their co-conspirators caused U.S. companies to sell and export electronic components in violation of ECRA and other U.S. laws and regulations; process and accept payments in furtherance of such illicit transactions; and file false documents and fail to file documents with BIS and other U.S.

government agencies, including required statements regarding the ultimate consignee and purchaser. The defendants and their co-conspirators also caused U.S. financial institutions to process millions of dollars in payments in violation of U.S. laws and regulations. Many of these transactions were processed through bank accounts held by SH Brothers and SN Electronics and correspondent accounts at banks in New York City and within the Eastern District of New York.

      B.    <u>GOLTSEV's Relationship with Military End Users in Russia</u>

      28.    The defendant NIKOLAY GOLTSEV had long-standing relationships with Radioavtomatika, Testkomplekt, EKB-Neva and other Russia-based entities and procured electronic components for them for more than 12 years.

      29.    Communications involving the defendant NIKOLAY GOLTSEV and Russian procurement agents, including the defendant YEKATERINA VETOSHKINA and others, described efforts to evade U.S. export controls and other laws and the fact that the electronic components were destined for military users in Russia. For example, in a text message exchange between GOLTSEV and VETOSHKINA on or about December 22, 2016, GOLTSEV advised that he "fully understands that this [ordered electronic component] is military in nature," which VETOSHKINA directed GOLTSEV to "definitely send to Radioavtomatika, like in our agreement." In another message exchange between GOLTSEV and VETOSHKINA on or about January 17, 2017, GOLTSEV stated, "I understand that this is a military end user" and recommended that Radioavtomatika should test the parts in their laboratory. In a subsequent message, VETOSHKINA advised GOLTSEV that she was waiting for "the military to sign the contract" before placing the order. In or about October 2021, VETOSHKINA again advised GOLTSEV that paperwork

regarding an order of electronics stated that the items were destined for Russia. In response, GOLTSEV told VETOSHKINA, "in that case, bill to World Jetta"— a reference to World Jetta (H.K.) Logistics Ltd., a Hong Kong company that BIS added to its Entity List on or about June 28, 2022—but confirmed that he would nevertheless send it to Radioavtomatika in Russia. In a message exchange on or about October 31, 2022, VETOSHKINA's subordinate employee asked GOLTSEV, "please tell me do you have these goods, priceless in Russia," and listed several different electronic components, including coaxial switches and capacitors, that were barred from being shipped to Russia. GOLTSEV responded with price quotes for the items.

30. Communications between the defendant NIKOLAY GOLTSEV and Russian procurement agents, including the defendant PAVEL CHERNIKOV, reflected a sophisticated understanding of U.S. export controls and sanctions. For example, on or about December 30, 2022, in a message exchange with CHERNIKOV regarding an order placed through SH Brothers, GOLTSEV requested "separate invoices . . . the ECCN[s] aren't very pretty. We'll ship them piecemeal." In a message on or about February 28, 2023, GOLTSEV told CHERNIKOV that "Elnet [Electronic Network] got sanctioned . . . do me a favor. If anyone ever asks about me, don't tell them who I am, where I am, etc. . . . Elnet's been in trouble for a long time because they exported a lot to Russia." Nevertheless, GOLTSEV confirmed he would be able to complete sales for "microchips, transistors, [and] circuits" because "we work with China, not Russia, therefore all is good." In a subsequent conversation, CHERNIKOV again queried GOLTSEV about "any other USA companies that don't mind selling to China." GOLTSEV responded, "we have one for emergencies, but we're keeping them as a last resort."

31.     The defendant NIKOLAY GOLTSEV also received requests from the defendant OLEG ZENCHENKO to obtain items on the CCL that were controlled for anti-terrorism reasons.   For example, on or about December 16, 2022, in response to a query, ZENCHENKO advised GOLTSEV that "76 pcs, you can buy them here with ECCN 3A991c.3."   In message on or about February 1, 2023, ZENCHENKO asked GOLTSEV, "ECCN: 5A991.b.4 can you get this?" and included a screenshot of a product from a Texas-based electronics distributor ("Texas Company 1"), an entity the identify of which is known to the Grand Jury.   Similarly, in a message on or about February 6, 2023, ZENCHENKO asked GOLTSEV, "can you get this ECCN? 4A994I."   Later, in a message on or about February 22, 2023, ZENCHENKO requested "40 pcs ECCN 5A991.b.1.   Can you get this?" Between November 2022 and February 2023, SH Brothers made nine shipments to ZENCHENKO in Russia through a Turkish intermediary company.

C.     The Establishment and Use of SH Brothers

32.     Following the imposition of additional sanctions and export controls in response to Russia's invasion of Ukraine in February 2022, the defendants NIKOLAY GOLTSEV and SALIMDZHON NASRIDDINOV began using SH Brothers to facilitate illicit exports to Russia.

33.     In a text message exchange between the defendant SALIMDZHON NASRIDDINOV and the defendant NIKOLAY GOLTSEV on or about and between June 8, 2022 and June 9, 2022, NASRIDDINOV stated, "I spoke with the guys, we will set it up through America, I got to Moscow, tomorrow will also have a meeting, we decided upon logistics, if you have people in Moscow we can also meet and discuss the scheme so that they would pick up from Moscow."   GOLTSEV responded that he had "many orders," but

that it was "becoming difficult to do business here [in Canada through Electronic Network], maybe it will be easier to do through the US . . . everything is loaded from the USA . . . everything that needs to be received, payment place the orders, get the goods together and unload it in any 'friendly' country."

34.     In or about and between August 2022 and September 2023, SH Brothers exported more than 250 shipments of electronic components, valued at more than $7 million, to third-country transshipment companies; the shipments were then unlawfully diverted to Russia.   During this same period, financial records, including wire transactions through correspondent accounts at New York City banks and within the Eastern District of New York, reflected millions of dollars in payments from Russian entities to these transshipment companies.

35.     For example, in or about and between March 2023 and May 2023, SH Brothers shipped approximately $404,949 worth of integrated circuits and other electronics to the defendant VLADIMIR BOCHKAREV and his front company Suntronic in the UAE, which were then sent to Petersburg Intelligent Transport Logistics, a Russian entity that OFAC added to its SDN list on or about May 19, 2023.   Notably, BOCHKAREV's Internet Protocol ("IP") address, which was used to communicate with the defendant NIKOLAY GOLTSEV about the orders, corresponded to a location in St. Petersburg, Russia, rather than the UAE.

D.     SH Brothers Shipments to Testkomplekt

36.     In or about and between September 2022 and November 2022, SH Brothers exported approximately 15 shipments of electronic components, valued at approximately $352,000, to Testkomplekt in Russia through a Hong Kong intermediary

company ("Hong Kong Company 1"), an entity the identify of which is known to the Grand Jury.

37.     These exports included a shipment on or about September 8, 2022 of connectors manufactured by a Texas company; a shipment on or about September 15, 2022 of connectors manufactured by a Pennsylvania and Switzerland-based company; a shipment on or about September 28, 2022 of computer modules manufactured by a Minnesota company; and a shipment on or about October 2, 2022 of converters manufactured by a Massachusetts company.

38.     In or about November 2022, U.S. Customs and Border Protection ("CBP") detained several shipments made by SH Brothers to Hong Kong Company 1 that were ultimately destined for Testkomplekt in Russia.   In electronic message exchanges, the defendant PAVEL CHERNIKOV repeatedly queried the defendant NIKOLAY GOLTSEV about the status of these detained shipments and provided GOLTSEV with false information that GOLTSEV could use to respond to CBP inquiries.   GOLTSEV communicated with CBP using the alias "Nick Stevens" and an SH Brothers email address with the signature "Procurement Department" and the SH Brothers's Brooklyn, New York address.   When asked about Hong Kong Company 1's principal, GOLTSEV responded that the person had a Chinese-sounding surname rather than a Russian one.

E.     SH Brothers Shipments to Komtech

39.     In on about August 2022, SH Brothers made a shipment of microchips to the defendant YEKATERINA VETOSHKINA's company, Komtech, through a Turkish intermediary ("Turkish Company 1"), an entity the identify of which is known to the Grand Jury.   These microchips had a Tier 1 HTS code listed on the Common High Priority Items

List and required a license from BIS to be exported to Russia. VETOSHKINA acted as a go-between with the defendant NIKOLAY GOLTSEV and Komtech's founder and director. Specifically, in a message on or about August 31, 2022, Komtech's founder and director requested that VETOSHKINA procure 3,000 microchips made by an Arizona-based manufacturer. VETOSHKINA sourced the microchips through GOLTSEV and SH Brothers. SH Brothers received several payments from Turkish Company 1, including an October 3, 2022 payment for $5,300. The wire details for this payment listed the part number of the microchips and denoted "QTY 2000."

40. In a message exchange on or about April 21, 2023, the defendants YEKATERINA VETOSHKINA and NIKOLAY GOLTSEV discussed shipping the microchips through China or Turkey, ultimately deciding to make the shipment through Turkish Company 1 to "avoid problems." GOLTSEV provided VETOSHKINA with an SH Brothers invoice for 3,000 pieces of the requested microchip. The invoice listed the applicable HTS codes and payment information for an SH Brothers bank account in Brooklyn, New York. Shipping records reflected that a package containing the microchips was mailed to SH Brothers from Texas Company 1 on or about April 17, 2023. Two days later, on or about April 25, 2023, the same items were sent by the defendant SALIMDZHON NASRIDDINOV to Turkish Company 1 in Turkey.

F. **SH Brothers Shipments to Russian Entities Through Suntronic**

41. Between in or about November 2022 and August 2023, SH Brothers exported approximately 27 shipments, valued at approximately $1,086,058, to Suntronic. These shipments were then sent to Russian end users including Petersburg Intelligent Transportation Logistics. One such shipment on or about June 23, 2023 was for transceivers

carrying a Tier 1 HTS code listed on the Common High Priority Items List, which required a license from BIS to be exported to Russia. These types of transceivers have been found in Russian UAVs in Ukraine. Notably, Suntronic received approximately $15 million from Petersburg Intelligent Transportation Logistics in or about and between October 2022 and February 2023.

42. The defendant NIKOLAY GOLTSEV communicated with the defendant VLADIMIR BOCHKAREV to facilitate these shipments. In a message exchange on or about January 9, 2023, GOLTSEV informed BOCHKAREV that he needed an "end user declaration," to which BOCHKAREV responded, "darn." GOLTSEV replied, "or at least let me know what end user to put in there and then send it tomorrow, but it needs to match the application." BOCHKAREV responded, "then lets put the one we used last time," and the two agreed to falsely list a UAE company as the end user.

43. Similarly, in or about February and March 2023, the defendants NIKOLAY GOLTSEV and VLADIMIR BOCHKAREV also communicated about falsifying the names of end users. In a message in or about February 2023, GOLTSEV advised BOCHKAREV to "write something more substantial [to the U.S. company] so that there are no more questions." BOCHKAREV responded, "is it better to provide them with a Chinese end user," to which GOLTSEV stated, "yes should be ok." In a message on or about March 3, 2023, BOCHKAREV asked GOLTSEV if it was possible to make one shipment paid "via the Chinese company," since "each one separately so expensive, or does it mean extra trouble at customs?" GOLTSEV responded, "no sir, more than 50-60 will trigger a lot of interest it's better to break it up."

G.    The Establishment of SN Electronics

44.    On or about and between November 8, 2022 and November 15, 2022, the defendants NIKOLAY GOLTSEV and SALIMDZHON NASRIDDINOV exchanged a series of messages in which GOLTSEV commented that shipping to Russia had become "dangerous" and discussed a shipment of electronic components that had been detained by U.S. officials at John F. Kennedy International Airport ("JFK") in Queens, New York. NASRIDDINOV responded that "Ukrainians alleged that they're being bombed from parts from there [a U.S. company], maybe that's why they started investigating everything?" GOLTSEV replied, "we need to figure out why they keep holding the package . . . I don't really understand how they figured [it] out." In a subsequent message, on or about November 9, 2022, GOLTSEV commented that, "in the future we will need to load from several companies, not to attract attention . . . for now large packages will be dangerous until we understand what they figured out . . . we will need to think of diversifying the load . . . so that not everything is moving from the same deck."

45.    In response to increased scrutiny from U.S. officials, including the delay or detention of several outbound shipments from SH Brothers at JFK Airport, in or about January 2023, the defendants NIKOLAY GOLTSEV and SALIMDZHON NASRIDDINOV began using SN Electronics to order and export electronic components. In a text message exchange on or about and between January 31, 2023 and February 10, 2023, NASRIDDINOV confirmed to GOLTSEV that the "new company is already functioning . . . Its called SN Electronics." GOLTSEV responded, "Wonderful sir. Eagerly waiting for Tax ID sir. We had problems with some large orders from [Texas Company 1] . . . we will reorder later from SN." NASRIDDINOV later provided GOLTSEV with SN Electronics's

registered address in Brooklyn, New York, which was also the address of a restaurant that NASRIDDINOV owned.

46.     The defendants NIKOLAY GOLTSEV and SALIMDZHON NASRIDDINOV then used SN Electronics to obtain $36,871.49 worth of non-reflective switches from Texas Company 1 for the defendant PAVEL CHERNIKOV and Testkomplekt. These non-reflective switches had Tier 1 HTS codes that were included on the Common High Priority Items List and required a license from BIS to be exported to Russia.

47.     The defendants NIKOLAY GOLTSEV and SALIMDZHON NASRIDDINOV initially placed the order for these non-reflective switches from Texas Company 1 through SH Brothers.  In or about January 2023, Texas Company 1 cancelled the order for SH Brothers and told GOLTSEV that the "manufacturer requires that shipments of this product be direct to an END CUSTOMER from an AUTHORIZED DISTRIBUTOR only."  Subsequently, GOLTSEV placed the same order through SN Electronics, using the alias "Gio Ross" in his email communications with Texas Company 1 and falsely claiming in an email on or about February 15, 2023 that SN Electronics was a "prototype and design manufacturing company."  Texas Company 1 shipped the order to an SN Electronics address in Brooklyn, New York on or about February 21, 2023.  Once the shipment was made from Texas Company 1 to the SN Electronics address in Brooklyn—which, in realty, was NASRIDDINOV's restaurant—shipping records revealed that, on or about February 27, 2023, the items were exported by NASRIDDINOV to Robotronix in Hong Kong, a transshipment company frequently utilized by Testkomplekt.

H.    The Defendants Profited from the Criminal Scheme

48.    The defendants and their co-conspirators profited from their criminal scheme.   On or about September 15, 2022, in a text message from the defendant SALIMDZHON NASRIDDINOV to the defendant NIKOLAY GOLTSEV, NASRIDDINOV boasted, "SH [Brothers] is one of the best companies in the world, it's time to move forward onto the stock exchange and stock market, capital should be in the billions, we are working."   GOLTSEV responded, "pushing components to those who need it I can do, everything else you will have to teach me [three smile emojis]."

49.    In a text message exchange on or about January 13, 2023, the defendant NIKOLAY GOLTSEV complained to the defendant KRISTINA PUZYREVA that a subordinate of the defendant PAVEL CHERNIKOV "asked me to make 80 accounts . . . I am making accounts for 3 mln [i.e., million].   Fingers hurting already from the laptop." PUZYREVA responded, "Lot of money? We will get rich."   Later, on or about January 20, 2023, GOLTSEV messaged PUZYREVA, "Dasha [CHERNIKOV's employee] paid. 700k." Notably, financial records revealed wire transfers totaling approximately $700,000 into an SH Brothers account on or about and between January 18, 2023 and January 20, 2023 from the Hong Kong-based Robotronix in connection with an order for Testkomplekt.

50.    The defendant KRISTINA PUZYREVA utilized numerous bank accounts to make financial transactions in furtherance of the scheme.   For example, PUZYREVA was the signatory on two New York-based bank accounts, one that listed the defendant SALIMDZHON NASRIDDINOV's home address in Brooklyn, New York as the address of record.   Statements for these accounts reflected large cash deposits made in Brooklyn that corresponded with trips that PUZYREVA and the defendant NIKOLAY

GOLTSEV made from Canada to meet with NASRIDDINOV. Some of these deposits were in amounts just under $10,000. Notably the Internal Revenue Service ("IRS") maintained a transaction reporting requirement providing that any person who, during trade or business, received more than $10,000 cash in a single transaction was required report the transaction to the IRS. For example, on or about December 27, 2022, a $9,800 cash deposit was made into one of PUZYREVA's accounts at an automated teller machine ("ATM") in Manhattan, New York. On or about May 23, 2022, a cash deposit of $8,700 was made into one of PUZYREVA's accounts at an ATM in Manhattan, while a $4,000 deposit was made on the same day into the same account from an ATM in Brooklyn located near an address used by NASRIDDINOV and SH Brothers. On or about March 13, 2023, a cash deposit of $9,700 was made into one of PUZYREVA's accounts at an ATM in Manhattan. These deposits were then transferred to accounts held and used by PUZYREVA and GOLTSEV in Canada.

COUNT ONE
(Conspiracy to Defraud the United States)

51. The allegations contained in paragraphs one through 50 are realleged and incorporated as if fully set forth in this paragraph.

52. In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, did knowingly and willfully conspire to defraud the United States by impairing, impeding, obstructing and defeating, through deceitful and dishonest means, the lawful functions of the Department of

Commerce, an agency of the United States, in the enforcement of export laws and regulations, and the issuance of licenses relating to the export of goods.

53.     In furtherance of the conspiracy and to effect its objects, within the Eastern District of New York and elsewhere, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, did commit and cause the commission of, among others, the following:

<u>OVERT ACTS</u>

(a)     On or about May 22, 2022, PUZYREVA deposited a $25,002.72 check at a bank in Manhattan, New York.

(b)     On or about November 9, 2022, GOLTSEV and NASRIDDINOV discussed utilizing multiple intermediary companies in third countries to make shipments to Russia.

(c)     On or about February 1, 2023, ZENCHENKO sent GOLTSEV an electronic message asking GOLTSEV to purchase an electronic component (ECCN 5A991.b.4 and controlled for anti-terrorism reasons) from Texas Company 1.

(d)     On or about February 15, 2023, GOLTSEV, using the alias "Gio Ross," sent an email to Texas Company 1 claiming that SN Electronics was a "a prototype and design manufacturing company."

(e)     On or about February 27, 2023, NASRIDDINOV exported electronic components obtained from Texas Company 1, listing Robotronix in Hong Kong as the intermediate consignee.

(f)     On or about March 3, 2023, BOCHKAREV sent GOLTSEV an electronic message requesting a shipment to Russia from the United States through a company in China.

(g)     On or about March 13, 2023, PUZYREVA opened a bank account listing NASRIDDINOV's home address in Brooklyn, New York as the mailing address.

(h)     On or about April 21, 2023, VETOSHKINA and GOLTSEV agreed to make a shipment of microchips to Russia through Turkish Company 1 in Turkey.

(i)     On or about April 25, 2023, NASRIDDINOV sent a shipment of microchips to Russia through Turkish Company 1 in Turkey.

(j)     On or about April 25, 2023, NASRIDDINOV filed EEI containing false and misleading information regarding a shipment to Turkish Company 1 in Turkey.

(k)     On or about June 7, 2023, GOLTSEV, using the alias "Nick Stevens," filed EEI containing false and misleading information regarding a shipment to a company in Turkey.

(l)     On or about July 5, 2023, GOLTSEV, using the alias "Nick Stevens," filed EEI containing false and misleading information regarding a shipment to Suntronic in the UAE.

(m)     On or about December 30, 2023, GOLTSEV requested separate invoices from CHERNIKOV due to the ECCN classification of certain ordered electronic components.

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT TWO
### (Wire Fraud Conspiracy)

54.     The allegations contained in paragraphs one through 50 are realleged and incorporated as if fully set forth in this paragraph.

55.     In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud one or more U.S. companies and to obtain money and property from said companies by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, to wit: electronic communications, emails and other online communications and monetary transfers in and through the Eastern District of New York and elsewhere, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349, 2 and 3551 et seq.)

## COUNTS THREE THROUGH SIX
### (Wire Fraud)

56.     The allegations contained in paragraphs one through 50 are realleged and incorporated as if fully set forth in this paragraph.

57.     On or about the dates set forth below, all dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NIKOLAY

GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR

BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG

ZENCHENKO, together with others, did knowingly and intentionally devise a scheme and

artifice to defraud one or more U.S. companies and to obtain money and property from said

companies by means of one or more materially false and fraudulent pretenses,

representations and promises, and, for the purpose of executing such scheme and artifice,

transmitted and caused to be transmitted one or more writings, signs, signals, pictures and

sounds by means of wire communication in interstate and foreign commerce, to wit: the wire

transmissions set forth below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|-------|---------------------------------------|--------------------------------|
| THREE | July 15, 2022 | $39,745 wire transfer from an account in Hong Kong to an SH Brothers Account in the Eastern District of New York. |
| FOUR | September 14, 2022 | $273,750 wire transfer from an account in Hong Kong to an SH Brothers account in the Eastern District of New York. |
| FIVE | September 15, 2022 | $95,830 wire transfer from an account in Hong Kong to an SH Brothers account in the Eastern District of New York. |
| SIX | October 3, 2022 | $5,300 wire transfer from an account in Turkey to an SH Brothers account in the Eastern District of New York. |

(Title 18, United States Code, Sections 1343 and 3551 et seq.)

COUNT SEVEN
(Money Laundering Conspiracy)

58.     The allegations contained in paragraphs one through 50 are realleged

and incorporated as if fully set forth in this paragraph.

59.     In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, did knowingly and intentionally conspire to:

(a)     transport, transmit and transfer monetary instruments and funds from one or more places in the United States to and through one or more places outside the United States and to one or more places in the United States from and through one or more places outside the United States, (i) with the intent to promote the carrying on of one or more specified unlawful activities, to wit: smuggling, in violation of 18 U.S.C. § 554, and wire fraud, in violation of 18 U.S.C. § 1343, all contrary to Title 18, United States Code, Section 1956(a)(2)(A); and (ii) which transactions in fact involved the proceeds of unlawful activity, to wit: smuggling, in violation of 18 U.S.C. § 554, and wire fraud, in violation of 18 U.S.C. § 1343, knowing that the monetary instruments and funds involved in the transportation, transmission and transfer represented the proceeds of said unlawful activity, and knowing that such transportation, transmission and transfer was designed in whole and in part to conceal and disguise the nature, the location, the source, the ownership and the control of the proceeds of said specified unlawful activity, all contrary to Title 18, United States Code, Section 1956(a)(2)(B)(i); and

(b)     engage in one or more monetary transactions within the United States in criminally derived property of a value greater than $10,000 that was derived from one or more specified unlawful activities, to wit: smuggling, in violation of 18 U.S.C. § 554,

and wire fraud, in violation of 18 U.S.C. § 1343, all contrary to Title 18, United States Code, Section 1957(a).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## COUNT EIGHT
(Conspiracy to Violate ECRA)

60.     The allegations contained in paragraphs one through 50 are realleged and incorporated as if fully set forth in this paragraph.

61.     In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, did knowingly and willfully conspire to violate and to cause one or more violations of licenses, orders, regulations and prohibitions issued under the Export Control Reform Act, Title 50, United States Code, Sections 4810 et seq.

62.     It was a part and an object of the conspiracy that the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, would and did agree to export and cause to be exported from the United States to Russia items on the Commerce Control List, as set forth in Title 15, Code of Federal Regulations, Part 774, Supplement Number 1, and items on the Common High Priority List, as set forth in Title 15, Code of Federal Regulations, Part 746,

Supplement Number 4, without having first obtained a license for such export from the U.S. Department of Commerce.

(Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G) and 4819(b); Title 18, United States Code, Sections 3551 et seq.; Title 15, Code of Federal Regulations, Sections 736.2(b)(1), 746.5(a)(1)(ii), 746.8(a)(1) and 764.2)

## COUNT NINE
(Smuggling Goods from the United States)

63.     The allegations contained in paragraphs one through 50 are realleged and incorporated as if fully set forth in this paragraph.

64.     In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA PUZYREVA, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, did knowingly and fraudulently export and send from the United States, merchandise, articles and objects, to wit: items on the Commerce Control List set forth in Title 15, Code of Federal Regulations, part 774, Supplement Number 1, and items on the Common High Priority List set forth in Title 15, Code of Federal Regulations, part 746, supplement number 4, contrary to United States laws and regulations, to wit: Title 50, United States Code, Sections 4819(a)(1), 4819(a)(2)(A)-(G) and 4819(b) and Title 15, Code of Federal Regulations, Sections 736.2, 746.5(a)(1)(ii) and 746.8(a)(1), and did fraudulently and knowingly receive, conceal and facilitate the transportation and concealment of such merchandise, articles and objects, prior

to exportation, knowing the same to be intended for exportation contrary to such United States laws and regulations.

(Title 18, United States Code, Sections 554(a), 2 and 3551 et seq.)

## COUNT TEN
(Failure to File and False Filing of Electronic Export Information)

65.     The allegations contained in paragraphs one through 50 are realleged and incorporated as if fully set forth in this paragraph.

66.     In or about and between January 2022 and October 2023, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, VLADIMIR BOCHKAREV, PAVEL CHERNIKOV, YEKATERINA VETOSHKINA and OLEG ZENCHENKO, together with others, did knowingly and willfully fail to file, cause the failure to file, and cause the filing of false and misleading electronic export information through the Automated Export System relating to the transportation of electronic items and devices that had a value of more than $2,500 from the United States to the Russian Federation.

(Title 13, United States Code, Section 305(a)(1); Title 18, United States Code, Sections 2 and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS ONE THROUGH SIX AND COUNT NINE

67.     The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Counts One through Six and Count Nine, the government will seek forfeiture in accordance with Title 18, United States Code, Section

981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person

convicted of such offenses to forfeit any property, real or personal, constituting, or derived

from, proceeds obtained directly or indirectly as a result of such offenses, including but not

limited to the real property and premises located at 3734 Laurel Avenue, Brooklyn, NY

11224.

68.     If any of the above-described forfeitable property, as a result of any act

or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendants up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States

Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT SEVEN

69.     The United States hereby gives notice to the defendants that, upon their

conviction of the offense charged in Count Seven, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 982(a)(1), which requires any person

convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property, including but not limited to the real property and premises located at 3734 Laurel Avenue, Brooklyn, NY 11224.

70.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a)     cannot be located upon the exercise of due diligence;

(b)     has been transferred or sold to, or deposited with, a third party;

(c)     has been placed beyond the jurisdiction of the court;

(d)     has been substantially diminished in value; or

(e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT EIGHT

71.     The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Eight, the government will seek forfeiture in accordance with Title 50, United States Code, Section 4819(d)(1), which requires any person convicted of such offense to forfeit any of the person's property: (a) used or intended to be

used, in any manner, to commit or facilitate the offense; (b) constituting or traceable to the gross proceeds taken, obtained or retained, in connection with or as a result of the offense; and/or (c) constituting an item or technology that was exported or intended to be exported in violation of the Export Control Reform Act, including but not limited to the real property and premises located at 3734 Laurel Avenue, Brooklyn, NY 11224.

72. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)      cannot be located upon the exercise of due diligence;

        (b)      has been transferred or sold to, or deposited with, a third party;

        (c)      has been placed beyond the jurisdiction of the court;

        (d)      has been substantially diminished in value; or

        (e)      has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 50, United States Code, Section 4819(d)(2), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 50, United States Code, Sections 4819(d)(1) and 4819(d)(2); Title 21, United States Code, Section 853(p))

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNT TEN

73. The United States hereby gives notice to the defendants charged in Count Ten that, upon their conviction of such offense, the government will seek forfeiture in

accordance with Title 13, United States Code, Section 305(a)(3), which requires any person convicted of such offense to forfeit any of the person's: (a) interest in, security of, claim against or property or contractual rights of any kind in the goods or tangible items that were the subject of the offense; (b) interest in, security of, claim against or property or contractual rights of any kind in tangible property that was used in the export or attempt to export that was the subject of the offense; and/or (c) property constituting, or derived from, any proceeds obtained directly or indirectly as a result of the offense, including but not limited to the real property and premises located at 3734 Laurel Avenue, Brooklyn, NY 11224.

74.     If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)     cannot be located upon the exercise of due diligence;

        (b)     has been transferred or sold to, or deposited with, a third party;

        (c)     has been placed beyond the jurisdiction of the court;

        (d)     has been substantially diminished in value; or

        (e)     has been commingled with other property which cannot be

divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 13, United States Code, Section 305(a)(3); Title 21, United States Code, Section 853(p))

A TRUE BILL

_____
FOREPERSON

_____
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2019R01707
FORM DBD-34
JUN. 85

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK
## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

NIKOLAY GOLTSEV, SALIMDZHON NASRIDDINOV, KRISTINA
PUZYREVA, VLADIMIR BOCHKAREV PAVEL CHERNIKOV, YEKATERINA
VETOSHKINA and OLEG ZENCHENKO.

Defendants.

# INDICTMENT

T. 13, U.S.C., §§ 305(a)(1) and 305(a)(3); T. 18, U.S.C., §§ 371, 554(a), 981(a)(1)(C),
982(a)(1), 982(b)(1), 1343, 1349, 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p);
T. 28, U.S.C., § 2461(c); T. 50, U.S.C., §§ 4819(a)(1), 4819(a)(2)(A)-(G), 4819(b),
4819(d)(1) and 4819(d)(2);
T. 15, C.F.R., §§ 736.2(b)(1), 746.5(a)(1)(ii), 746.8(a)(1) and 764.2)

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

***Artie McConnell and Ellen H. Sise, Assistant U.S. Attorneys (718) 254-7000***